Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50356 | **DATE** | 2/7/2003 |
| **CASE TITLE** | Peterson vs. Community General Hospital, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' joint motion to dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendants' joint motion to dismiss is granted. Relator is given twenty-one days from the date of this order to file an amended complaint consistent with this opinion. If relator does not file an amended complaint within the allotted time, this case will be dismissed with prejudice without further notice and a final judgment entered against relator.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB - 7 2002 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | FEB - 7 2002 | |
| | | | date mailed notice | |
| /LC | courtroom deputy's initials | 03 FEB -7 PM 1:20 FILED-WD | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# MEMORANDUM OPINION AND ORDER

Plaintiff, Dr. David Peterson, who is actually suing as a relator on behalf of the United States, has filed this qui tam action under the False Claims Act, 31 U.S.C. § 3730(b)(1) ("FCA"), against defendants, CGH Medical Center (improperly named as "Community General Hospital"), Sterling Rock Falls Clinic, and Katherine Shaw Bethea Hospital. Jurisdiction and venue are proper based on 31 U.S.C. § 3732(a). Before the court is defendants' joint motion to dismiss, filed pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

The so-called Stark law, 42 U.S.C. § 1395nn, generally prohibits, with various exceptions, a physician from referring Medicare patients to an entity for designated health care services when the physician has a "financial relationship" with that entity (a practice known more commonly as "self-referral"). See id. § 1395nn(a)(1)(A). An entity that provides health care services pursuant to a self-referral may not seek payment for those services. See id. § 1395nn(a)(1)(B). In his complaint, relator accuses defendants of violating the Stark law by "providing numerous Dixon/Sterling-Rock Falls area physicians with financial remunerations and other benefits in exchange for referrals to Defendants' health care facilities." (Am. Compl. ¶ V, p. 4) He further alleges defendants submitted, over a four-year period, somewhere between $100 to $250 million worth of claims to Medicare for reimbursement of services they rendered to Medicare patients and, in doing so, falsely certified that such claims complied with federal law — falsely because they violated the Stark law. It is these "false or fraudulent" claims that form the basis of relator's FCA action.

Because defendants do not contest the issue, the court assumes for present purposes the FCA can be used as a vehicle to enforce the Stark law, even when the claims are not false in the sense that the services were actually performed, medically necessary, and billed at an appropriate rate. See, e.g., United States ex rel. Sharp v. Consolidated Med. Transp., Inc., No. 96 C 6502, 2001 WL 1035720, at *3-11 (N.D. Ill. Sept. 4, 2001); United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1047 (S.D. Tex. 1998); United States ex rel. Pogue v. American Healthcorp, Inc., 914 F. Supp. 1507, 1509-13 (M.D. Tenn. 1996). Instead, defendants argue relator's allegations of fraud do not meet the heightened pleading standard of Rule 9(b). Relator concedes Rule 9(b) applies to claims brought under the FCA. See United States ex rel. Clausen v. Laboratory Corp. of Am., Inc., 290 F.3d 1301, 1308-09 & n.16 (11th Cir. 2002) (collecting cases), cert. denied, -- U.S. --, 2003 WL 95369 (Jan. 13, 2003).

The essence of the fraud relator alleges is this: (1) defendants provided financial remunerations and other benefits to various physicians; (2) in exchange, those physicians referred Medicare patients to defendants; (3) defendants billed Medicare for the services they provided to those patients; and (4) defendants falsely certified their claims complied with federal law. Although he has provided ample detail about (1), relator has made only the sketchiest allegations concerning (2), (3), and (4). Specifically, throughout his complaint relator does not identify a single Medicare patient referred to defendants pursuant to any of the allegedly unlawful self-referral arrangements. Nor does he identify or attach a single Medicare claim submitted by defendants for services rendered pursuant to a forbidden referral, let alone one for which defendants certified their compliance with federal law.

Here is an example of what relator does allege: "On or about June 15, 1999, Defendant CGH guaranteed to pay a salary in excess of then current market demands for Dr. Robert Whitaker who became employed by co-defendant Sterling Rock Falls Clinic in exchange for Dr. Whitaker's exclusive referral of Medicare patients to defendant CGH. Defendant CGH, from on or about June 15, 1999 through August 30, 2001, submitted claims to Medicare for reimbursement of services rendered to Medicare patients in an approximate amount of $40 million dollars. That from June 15, 1999 through August 30, 2001, Defendant CGH certified in writing and/or implicitly to Medicare that each submitted claim for reimbursement complied with federal, state, and local laws." (Am. Compl. ¶¶ V(F)(i)(a)-(b)) All of relator's allegations follow this same general pattern, only changing the name of the doctor and defendant, the type of financial remuneration, and the dates. In the court's opinion, such allegations do not satisfy Rule 9(b)'s particularity requirement.

As explained above, the whole point of relator's case is that defendants submitted Medicare claims for services they provided to patients who allegedly had been referred to them in violation of the Stark law. But which patients? And which claims? And which claims or other documents show defendants falsely certified their compliance with federal law? These questions are absolutely essential to relator's claim of fraud. Their answers, however, cannot be found anywhere in the sort of all-inclusive allegations quoted above. They must be pleaded with particularity. To be clear, the court does not expect relator to list every single patient, claim, or document involved, but he must provide at least some representative examples. See Clausen, 290 F.3d at 1312-13 (affirming dismissal of FCA claim alleging overbilling and submission of other false claims to Medicare because relator failed to plead specific instance of fraud with particularity under Rule 9(b)).

In response, relator argues he cannot provide such information because it is within defendants' exclusive possession. As other courts have noted, however, this is simply not true as the claims at issue were submitted to the government. See id. at 1314 n.25; United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999). And even if it were true, relator at the very least must plead the particular circumstances of defendants' fraud on information and belief, in which case he also must plead the factual basis for his suspicions. See Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 684 (7th Cir. 1992); see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997).

Finally, defendants have objected to paragraphs V(B), V(C), and V(H) of the amended complaint on the ground that they do not amount to violations of the Stark law. As for paragraphs V(C) and V(H), relator does not respond at all to defendants' objections, implicitly conceding their validity. With respect to V(B), it seems the substance of this paragraph, which is contained in subparagraph V(B)(ii)(a), is nearly identical to the first two subparagraphs in paragraph V(F)(ii)(a), except the latter provides far more detail, so that the former is simply redundant and unnecessary. As the court is requiring relator to replead his complaint to comply with Rule 9(b) anyway, he can at the same time either amend these paragraphs or drop them altogether.

For the reasons stated above, defendants' motion to dismiss is granted. Relator is given twenty-one days from the date of this order to file an amended complaint consistent with this opinion. Any such amended complaint also shall be recaptioned to identify the plaintiff as "United States ex rel. Dr. David Peterson." If relator does not file an amended complaint within the allotted time, this case will be dismissed with prejudice without further notice and a final judgment entered against relator.